Gregory Marshall (019886)
Becca J. Wahlquist (*pro hac vice forthcoming*)
Rachael Peters Pugel (032626)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
E-Mail: gmarshall@swlaw.com
        bwahlquist@swlaw.com
        rpugel@swlaw.com

*Attorneys for RE/MAX LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel DeClements and Sam Tuli individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>          v.<br><br>RE/MAX, LLC a Delaware Limited Liability Company,<br><br>                   Defendant. | No. 2:19-cv-05476-NVW<br><br>**MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**<br><br>**(Oral Argument Requested)** |

Plaintiffs Daniel DeClements ("DeClements"), an Arizona resident, and Sam Tuli ("Tuli"), a Texas resident, allege that they received telephone calls from "Re/Max realtors"[1] in violation of the Telephone Consumer Protection Act ("TCPA").  [Doc. 1 ("Compl.") at ¶¶ 43–44, 47, 51, 53–54, 56–58, 62–63, 68–69.]  Plaintiffs further allege that these realtors, "by placing unsolicited calls to consumers with expired listings[,]" "carr[ied] forward the marketing plan established and/or ratified by Re/Max's head office[.]"  [*Id.* at ¶ 45, 48, 52, 59, 64.]

---

[1] The term REALTOR® denotes a real estate professional who is a member of the National Association of REALTORS®.  *See* https://www.nar.realtor/about-nar.  Therefore, the terms "real estate agent" and REALTOR® are not synonymous—not every real estate agent is a REALTOR®.  Notwithstanding, the term "realtor" is used synonymously with the term "real estate agent" in this Motion because that is how the term is used by Plaintiffs in the Complaint.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Defendant RE/MAX, LLC ("RMLLC") is a global franchising operation that contracts with franchisees who pay for the right to use the RE/MAX® brand name in conjunction with their own. [Declaration of Serene Smith ("Smith Decl."), attached as Exhibit A, at ¶ 9.] RMLLC, either directly or through independent sub-franchisors, franchises real estate brokerages in over 110 countries and territories, including within the United States, and those franchisees within the United States are affiliated with over 60,000 real estate brokers nationwide. [*Id.* at ¶¶ 7, 12.] RMLLC, which is incorporated in Delaware and has its principal place of business in Denver, is not "essentially at home" in Arizona—indeed, practically all of its employees involved in overseeing its worldwide real estate and mortgage franchising operations work out of the Denver, Colorado office. [*Id.* at ¶¶ 4, 8, 14.] Thus, as will be detailed in Part II.B below, there is no general personal jurisdiction in this Arizona federal court over RMLLC.

Moreover, the conduct alleged in the Complaint does not demonstrate a substantial connection between RMLLC and Arizona sufficient to create specific jurisdiction in this forum. Plaintiff Tuli's allegations involve calls placed to him in Texas from Texas area codes, with no connection to Arizona alleged. [*See, e.g.,* Compl., at ¶ 43.] Plaintiff DeClements does allege to have received three (3) total calls in Arizona that were placed by two Arizona realtors [*id.* at ¶¶ 56, 62], but any conduct he alleges RMLLC was engaged in was directed (if at all) from Colorado to the entire United States, and not specifically to Arizona. Further, the calls at issue were not placed by or on behalf of RMLLC in furtherance of its franchising operations, as RMLLC does not call consumers regarding real estate sales and does not authorize franchisees or their employees or independent contractors to hold themselves out as "RE/MAX" in communications with the public. [*See* Smith Decl. at ¶¶ 23-24.] Thus, the Complaint's allegations as to RMLLC are insufficient to establish specific jurisdiction under controlling Supreme Court precedent, as detailed in Part II.C.

RMLLC, therefore, moves to dismiss the Complaint in its entirety for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

## MEMORANDUM OF POINTS AND AUTHORITIES

There is no question that personal jurisdiction over a defendant must exist in one of two variants—general or specific—before a federal court can adjudicate an action in federal court.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011).  General jurisdiction (or "all purpose" jurisdiction) permits a court to adjudicate any cause of action against the corporate defendant only where the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State."  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)).  In contrast, specific personal jurisdiction is available only when the particular claim in suit "arise[s] out of or relate[s] to the defendant's contacts with the *forum*."  *Bristol-Meyers Squibb Co. v. Superior Ct. of California, San Francisco Cty.,* 137 S. Ct. 1773, 1780 (2017) (emphasis in original) (quoting *Daimler,* 571 U.S. at 127).  In either case, a court's exercise of authority over a defendant must comport with the constitutional due process principles ensuring that maintenance of the lawsuit in the forum does not offend "traditional notions of fair play and substantive justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted).[2]

Here, Plaintiffs' allegations as to RMLLC are insufficient to establish either *general* or *specific* personal jurisdiction under controlling Supreme Court precedent.  It would not comport with the Due Process Clause or the requirements of personal jurisdiction for RMLLC—a Delaware limited liability company with its principal place of business in Colorado—to be required to defend this lawsuit **in Arizona**.  [*See* Smith Decl. at ¶¶ 4, 8.]  RMLLC did not place the calls at issue [*Id.* at ¶ 23], and RMLLC's alleged conduct in operating its franchising business was not alleged to be directed at Arizona.  RMLLC also does not control its franchisees [*Id.* at ¶ 10] and did not authorize its franchisee's employees

---

[2] The need for personal jurisdiction over an out-of-state defendant stems from the Due Process Clause, which "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

1    or independent contractors (real estate agents) to call on its behalf or to hold themselves out

2    as "RE/MAX" in communications with the public.  [*See id*. at ¶¶ 18, 21-22, 24.]  Thus, and

3    as detailed below, because there is neither general nor specific personal jurisdiction in

4    Arizona for Plaintiffs' claims as to RMLLC, the Court must dismiss the Complaint.

5    **I.    RELEVANT BACKGROUND**

6          **A.    Plaintiffs' Allegations Against RMLLC**

7          Plaintiff's allegations against RMLLC are that it promotes products and services that

8    a realtor could use to place calls in a manner that Plaintiffs allege could violate the TCPA,

9    and thus that it would "ratify" any illegal telemarketing of any of the more than 60,000

10   realtors affiliated with one of the 3,790 independently owned and operated RE/MAX

11   franchised offices in the United States.  [*See* Smith Decl. at ¶¶ 11-12.]

12         According to the Complaint, a "trend has surfaced in the real estate industry: cold

13   calling owners of properties who have had their [Multiple Listing Service ("MLS")] listing

14   expire or be canceled or withdrawn."  [Compl. at ¶ 6.]  Plaintiffs allege that "[t]his recent

15   trend . . . has resulted in many consumers receiving an onslaught of unsolicited

16   telemarketing calls to their cell phones after their listings expire or [are] otherwise cancelled

17   or withdrawn[.]"  [*Id.* at ¶ 8.]  Plaintiffs further allege that "Re/Max is aware of this

18   marketing trend and ratifies realtors' misconduct in a number of ways including (1)

19   endorsing Landvoice as an 'Approved Supplier' of Re/Max to its real estate agents, (2)

20   providing Landvoice the platform at annual Re/Max events to solicit its service to Re/Max

21   agents, (3) endorsing Coach Tom Ferry, who specifically recommends cold calling expired

22   listing leads through services like Landvoice, as an 'Approved supplier' of Re/Max to its

23   real estate agents, and (4) providing courses on Re/Max University available to all of

24   Re/Max's agents such as Tom Ferry's 'Breakthrough by Design' which specifically directs

25   agents to call leads provided by Landvoice."  [*Id.* at ¶ 9.]

26         Plaintiffs then claim that products such as Landvoice and SmartZip, and persons such

27   as Tom Ferry, were each approved suppliers of RE/MAX at one time or another, and further

28

- 4 -

allege that such products and services support cold-calling consumers who are likely to need assistance in selling their homes.  [*Id.* at ¶¶ 12-36.]

### B. Plaintiff Tuli's Allegations

Tuli, a resident of Texas, alleges that after he de-listed his house on July 16, 2018, he received twelve telephone calls on July 17, 18, 19, and 24, 2018 from three different realtors in Texas working out of RE/MAX franchises, and claims these calls were placed in violation of the TCPA.  [*See id.* at ¶¶ 2, 43–44, 47.]  Tuli further alleges that these telephone calls were made to his cellular telephone number and to a Google Voice telephone number that forwards directly to his cell phone, and that the telephone numbers were registered with the National Do Not Call Registry on August 4, 2007 and September 8, 2001.  [*Id.* at ¶¶ 39–40.]  According to Tuli, these telephone calls were placed by three realtors affiliated as independent contractors with three separate, independently owned and operated RE/MAX franchisees:  Mike Rekart, a RE/MAX Legacy agent, Melissa Loan Bui, a RE/MAX Dallas Suburbs agent, and an unknown RE/MAX Advantage agent.  [*Id.* at ¶¶ 44, 47, 51.]  Tuli alleges that he "never provided his cellular phone number, or any phone number to Re/Max, or otherwise consented to any Re/Max agent placing solicitation telephone calls to" him; that he believes many of the calls he received were made by an autodialer; and that the calls were made according to "the marketing plan established and/or ratified by Re/Max's head office."  [*Id.* at ¶¶ 45, 48.]

Plaintiff Tuli does not claim to have been in Arizona when receiving the complained-of calls, and indeed asserts no nexus between the calls he places at issue here and this forum.

### C. Plaintiff DeClements' Allegations

DeClements, a resident of Arizona, alleges that after he caused a property listing to be removed from the MLS on September 2, 2019, he received three telephone calls on September 2 and 3, 2019 from two realtors, affiliated as independent contractors with two separate, independently owned and operated RE/MAX franchisees located in Arizona, in violation of the TCPA.  [*Id.* at ¶¶ 1, 55–56, 62.]  DeClements alleges that the first call resulted in a prerecorded voicemail and that the second call was autodialed.  [*Id.* at ¶¶ 56–

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

57, 62.]  DeClements further alleges that these calls were placed by Monique Walker, a RE/MAX Excalibur agent, and Michael Kent, a RE/MAX Infinity agent.  [*Id.* at ¶¶ 58, 63.] DeClements alleges that he "never provided his cellular phone number, or any phone number to Re/Max, or otherwise consented to any Re/Max agent placing solicitation telephone calls to" him and that Walker and Kent "carr[ied] forward the marketing plan established and/or ratified by Re/Max's head office by placing unsolicited calls to consumers with expired listings."  [*Id.* at ¶¶ 68.]

Plaintiff DeClements apparently received the three calls in Arizona, and asserts that RMLLC's activities in allowing certain products and persons to be approved suppliers for RE/MAX franchise offices should make RMLLC liable for any TCPA violations of any realtor working with any RE/MAX franchisee.

### D.     The Facts Offered By RMLLC in Its Jurisdictional Declaration

RMLLC is a Delaware limited liability company with its principal place of business in Colorado.  [*See* Smith Decl. at ¶¶ 4, 8.]  RMLLC is one of the world's leading franchisors in the real estate industry, franchising real estate brokerages under the RE/MAX® brand in over 110 countries and territories.  [*Id.* at ¶ 7.]  Like other global franchising operations with independent franchisees (*i.e.,* Marriott Hotels or Keller Williams), RMLLC contracts with independently owned and operated franchisees who pay for the right to use RE/MAX's brand name in conjunction with their own (*i.e.,* "RE/MAX Alliance"), to create name recognition for their business that can help attract home sellers and purchasers.  [*Id.* at ¶ 9.][3] Thus, RMLLC is not itself a real estate broker, and does not engage in real estate brokerage activity or employ, direct, or control any of the over 60,000 licensed real estate brokers in the United States who are affiliated with one of the 3,790 independently owned and operated

---

[3] RMLLC's franchise business is not like that of franchisors such as McDonald's, which controls its franchisees' day-to-day operations and provides required materials for uniformity of experience.  *Id.* at ¶ 10.  Instead, RMLLC's franchisees are independently owned and operated, and RMLLC does not require the use of any particular products or services.  *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    RE/MAX franchisee's businesses in the United States, generally as independent contractors

2    of that business.  [*Id.* at ¶¶ 11-12.]

3        Instead of being involved in real estate sales, RMLLC's business involves selling

4    franchise opportunities and gathering fees for the limited use of the REMAX brand and

5    trademarks.  [*Id.* at ¶ 13.]  While RMLLC has over 500 employees in the United States

6    involved in overseeing its worldwide real estate and mortgage franchisor operations, all but

7    approximately 30 of those employees operate from RMLLC's principal place of business

8    in Denver, Colorado.  [*Id.* at ¶ 14.]  While one (1) RMLLC employee with a REMAX

9    franchise sales region encompassing Arizona, New Mexico, Nevada, Utah, and Colorado

10   does reside in Arizona, RMLLC does not have an office in Arizona, does not own, lease, or

11   have any interest in real property in Arizona, and is not registered to do business in Arizona.

12   [*Id.* at ¶¶ 15-16.]  And RMLLC does not do business with consumers in Arizona, as it is

13   only engaged in business-to-business transactions.  [*Id.* at ¶ 17.]

14       While there are various RE/MAX franchisees operating in Arizona under franchise

15   agreements with RMLLC (which give those franchisees a limited license to associate the

16   RE/MAX brand name in conjunction with their own company's name), RMLLC does not

17   control or operate the independent businesses of those franchisees.  [*Id.* at ¶ 18.]

18   Furthermore, all RE/MAX franchise agreements are subject to Colorado law—none are

19   subject to Arizona law.  [*Id.* at ¶ 19.]  RMLLC has contractual requirements for franchisees

20   operating in the United States to comply with all state and federal laws.  [*Id.* at ¶ 20.]

21   RMLLC has no contractual relationship with real estate salespersons affiliated with the

22   independent franchisees.  [*Id.* at ¶ 21.]

23       Each of the 3,790 independently owned and operated RE/MAX franchises

24   throughout the United States enters into its own franchise agreement and is a separate and

25   distinct business from RMLLC.  [*Id.* at ¶ 22.]  Those businesses are independently owned

26   and operated, retain their own employees, make their own choices on marketing, and are

27   solely responsible for the day-to-day supervision and control of their business.  [*Id.*]  The

28   telephone calls alleged in the Complaint to have been made to Plaintiffs were not placed by

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

or on behalf of RMLLC, which does not call consumers regarding real estate sales. [*Id.* at ¶ 23.] Further, RMLLC does not authorize independent franchisees or those franchisees' employees or independent contractors (real estate agents) to call on its behalf or hold themselves out as "RE/MAX" in communications with the public. [*Id.* at ¶ 24.]

Under these facts, as detailed below, RMLLC should be dismissed from this litigation as Plaintiffs' factual allegations have failed to show that personal jurisdiction exists in this forum over RMLLC.

## II.   ARGUMENT

### A.   Standards For Assessing Personal Jurisdiction Challenges

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler*, 571 U.S. at 125); *see also Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc.*, 169 F. Supp. 3d 931, 935 (D. Ariz. 2016) (internal citation omitted) ("Where, as here, there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which it sits.").

Arizona law permits its Courts to exercise personal jurisdiction "to the maximum extent permitted by . . . the United States Constitution." Ariz. R. Civ. P. 4.2(a); see also *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357 (Ct. App. 2017) (applying Supreme Court precedent to hold Wal-Mart was not subject to personal jurisdiction in Arizona). This constitutional threshold requires courts to consider the contacts which the defendant itself has created with the forum, "not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (internal citations omitted).

Personal jurisdiction must be established in the forum federal court, and can be either (1) general or (2) specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 nn.8–9 (1984). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing of jurisdictional facts establishing personal jurisdiction. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154-60 (9th Cir. 2006) (internal citation omitted) (affirming grant of defendant's motion

to dismiss for lack of personal jurisdiction).  The "mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (internal citation omitted); *see also Alexander v. Circus Enter., Inc*., 972 F.2d 261, 262 (9th Cir. 1992) (internal citation omitted) ("this circuit has held that for purposes of personal jurisdiction, 'we may not assume the truth of allegations in a pleading which are contradicted by affidavit.'"); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (internal citation omitted) ("When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'").

### B. The Complaint Does Not Establish That This Court Has General Jurisdiction over RMLLC.

General jurisdiction requires that a foreign corporation's affiliations with the forum state be so "continuous and systematic" that the corporation is rendered "essentially at home in the forum state."  *Daimler*, 571 U.S. at 127 (emphasis added) (quoting *Goodyear*, 564 U.S. at 919); *id.* at 138–39 (the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'").

Thus, establishing general jurisdiction over a non-resident defendant is an exacting standard, and is limited, with rare exception not applicable here, to only the "place of incorporation and principal place of business."  *Id.* at 137 (internal citations omitted) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable"); *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 801 (9th Cir. 2004) (internal citation omitted) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any

of its activities anywhere in the world."); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (internal citation omitted) ("Simple jurisdictional rules . . . promote greater predictability.").

The Supreme Court has expressly rejected the idea as "unacceptably grasping" that general jurisdiction can be exercised in every state where a corporation "engages in a substantial, continuous, and systematic course of business." *Daimler,* 571 U.S. at 137–38; *id*. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them[;] [o]therwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

Further, the Supreme Court held in *Daimler* that an agency theory can no longer be used to create general jurisdiction over a defendant who is not essentially at home in a forum. *Daimler,* 571 U.S. at 758-60; *id.* at 759 (quoting *Bauman v. DaimlerChrysler Corp.*, 676 F.3d 774, 777 (2011) (O'Scannlain, J., dissenting from denial of rehearing en banc) (holding that such an analysis "stacks the deck" and "will always yield a pro-jurisdiction answer" because "[a]nything a corporation does through an independent contractor, subsidiary, or distributor is presumably something that the corporation would do 'by other means' if the independent contractor, subsidiary, or distributor did not exist."); *id*. at 759–60 ("agency theory . . . appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in Goodyear."); *see also Williams v. Yamaha Motor Co. Ltd*., 851 F.3d 1015, 1023 (9th Cir. 2017) ("Daimler voided our agency approach for imputing contacts for the purpose of general jurisdiction"); *Sutcliffe v. Honeywell Int'l, Inc*., No. CV–13–01029–PHX–PGR, 2015 WL 1442773, at *5 (D. Ariz. Mar. 30, 2015) ("the Supreme Court essentially rejected an agency theory of general jurisdiction in *Daimler*"); *Haller v. Advanced Indus. Comput., Inc*., No. CV–13–02398–PHX–DGC, 2015 WL 854954, at *4 (D. Ariz. Feb. 27, 2015) (noting that the Supreme Court had rejected the agency theory where plaintiff argued contacts could be imputed between corporate entities); *Nakanwagi v. Tenet Healthcare Corp*., No. CV-15-

01596-PHX-DGC, 2017 WL 394492 at *2 (D. Ariz. Jan. 30, 2017) (finding parent-subsidiary relationship could not be used to attribute contacts as the Supreme Court had rejected that theory); *AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5851622, at *3 (D. Ariz. Oct. 6, 2016) (noting Supreme Court had rejected agency theory where plaintiff argued contacts of website should be imputed to owner/operator).

Given this law, and the facts detailed in RMLLC's jurisdictional declaration, there is no general jurisdiction here over RMLLC.  Under *Daimler*, RMLLC is not essentially at home in Arizona—there is simply nothing connecting RMLLC (a Delaware corporation with its principal place of business in Colorado) to Arizona that meets the "exacting standard" of general jurisdiction.  *See Daimler*, 571 U.S. at 137; *Schwarzenegger*, 374 F.3d at 801; *see also LeMaire*, 242 Ariz. at 358–59, 362–63, ¶¶ 1–2, 20–21 (holding no general jurisdiction in Arizona existed over Wal-Mart, a Delaware corporation with its principal place of business in Arkansas, even though in Arizona Wal-Mart had 127 retail locations, four distribution centers, 33,910 employees (more Arizonans than the next two largest employers combined), spent $1.5 billion with suppliers, collected $270.3 million in Arizona sales taxes, and paid $91.5 million in Arizona taxes)).

Further, an agency theory based on RMLLC's franchisees' contacts or the contacts of those franchisees' independent contractor realtors with Arizona cannot be used to create general jurisdiction over RMLLC.  *See Daimler*, 571 U.S. at 134–35; *LeMaire*, 242 Ariz. at 360, ¶¶ 8–9; *Leon*, 2019 WL 859580, at *2–3.  The Supreme Court has expressly rejected the idea that general jurisdiction can be exercised in every state where a corporation "engages in a substantial, continuous, and systematic course of business."  *Daimler*, 571 U.S. at 137–38; *id.* at 139, n.20; *LeMaire*, 242 Ariz. at 361, ¶ 15 (citing *Goodyear* for the proposition that the Supreme Court has "reasoned that placement of [a product] into the stream of commerce, some of which may end up in the forum, is not enough to confer general jurisdiction").  Accordingly, Plaintiffs cannot establish a *prima facie* case that RMLLC is subject to general jurisdiction in Arizona.

### C. The Complaint Does Not Establish That This Court Has Specific Personal Jurisdiction Over RMLLC.

Turning to the specific jurisdiction inquiry, this avenue to establishing personal jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 571 U.S. at 284 (internal citation omitted); *Bristol-Myers Squibb Co*., 137 S. Ct. at 1779 (citing *Walden* for the proposition that the "primary focus" of the "personal jurisdiction inquiry is the defendant's relationship to the forum State"). Specific jurisdiction is "case-linked," meaning that the lawsuit must arise out of or relate to the defendant's purposeful conduct in the state. *Bristol-Myers Squibb Co., 137* S. Ct. at 1785; *Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.").

Significantly, the defendant's relationship with the forum state "must arise out of contacts that the 'defendant himself' creates with the forum State" and "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284–85 (emphasis in original) (internal citations omitted). A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 286 (internal citation omitted); *id.* ("Due process requires that a defendant be hauled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co*., 137 S. Ct. at 1781 (citing *Goodyear*, 564 U.S. at 919 n.6); see also *Goodyear*, 564 U.S. at 930 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co*., 137 S. Ct. at 1780 (emphasis added) (internal citation omitted). A "defendant's

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

general connections with the forum are not enough" because even continuous activity within a state does not "support the demand that the corporation be amenable to suits unrelated to that activity." *Id.* at 1781 (internal citation omitted).

Plaintiffs here allege no actions by RMLLC that would have been specifically directed into Arizona so as to support specific jurisdiction. Instead, Plaintiffs appear to rely on claims that as to Plaintiff DeClements' claims concerning the three (3) calls he received in Arizona, RMLLC could be vicariously liable for the two Arizona realtors' calls, if those calls did indeed violate the TCPA, given that the realtors were affiliated with a RE/MAX franchisee.

District courts considering whether an agency theory can be used to find specific jurisdiction post-*Daimler* for TCPA claims[4] have applied the doctrines of actual authority, apparent authority, or ratification—agency theories under which vicarious liability for TCPA violations could be found to exist—and have held that at least one of these agency relationships must be adequately alleged in a complaint. *See, e.g., Phan v. Grand Bahama Cruise Line, LLC*, No. 15-cv-05019-BLF, 2016 WL 1427648, at *2 (N.D. Cal. Apr. 12, 2016) ("While the Court recognizes that vicarious liability is a valid theory for relief under the TCPA and for exercising jurisdiction over a defendant that otherwise lacks sufficient contacts with the forum, the Court finds that Plaintiffs have failed to adequately plead any of the three forms of agency necessary to support a claim of vicarious liability or for exercising jurisdiction on that basis here.").

---

[4] As detailed in the previous section, the Ninth Circuit's agency test was invalidated in *Daimler* as to general jurisdiction. However, the Supreme Court left open whether an alleged agency relationship could still be used for finding specific jurisdiction. *See, e.g., Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (citing *Daimler*, 571 U.S. at 135 n.13) ("While *Daimler* voided our agency approach for imputing contacts for the purpose of general jurisdiction, it left open the question of whether an agency relationship might justify the exercise of specific jurisdiction."). *See also Maguire v. Coltrell*, No. CV–14–01255–PHX–DGC, 2015 WL 1966471, at *3–4 (D. Ariz. Apr. 30, 2015) ("In different contexts, courts have consistently warned against confusing the standards for imposing liability and for exercising personal jurisdiction . . . . 'Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum.'").

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Thus, to state a plausible claim for <u>actual authority</u>, a "plaintiff must allege facts showing that [the principal entity] had the right to control [the agent entity] and the manner and means of the calls." *Naiman v. TranzVia LLC,* No. 17-cv-4813-PJH, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (internal citations omitted) (finding failure to state such a claim where plaintiff had "not pled a single fact demonstrating that TranzVia actually had control over Rose such that it can be held vicariously liable for any of Rose's purported violations of the TCPA."). "To state a plausible claim under an <u>apparent authority theory</u>, plaintiff must allege facts showing that [the principal entity] did or said something sufficient to create a reasonable belief that [the agent entity] had authority to act on behalf of [it]." *Id.* at *7 (internal citations omitted) ("Apparent authority cannot be shown by allegations that the alleged agent 'claimed authority or purported to exercise it.'").

Finally, "[t]o state a plausible claim under a <u>ratification theory</u>, plaintiff must allege facts showing that [the principal entity] ratified acts taken by [the agent entity] by knowingly accepting the benefits of those acts." *Id.* (internal citation omitted) ("However, a principal is not bound by a ratification made 'without knowledge of material facts about the agent's act.'"); *see also id.* at *10 ("to be liable (and hence subject to personal jurisdiction) for TCPA violations under a ratification theory, the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further.").

In the present case, Plaintiffs do not allege any connection—let alone any substantial connection—between RMLLC's alleged conduct and the State of Arizona. The only alleged contact with Arizona—the placement of calls to DeClements by independent contractor realtors associated with independent franchisees—is not related to RMLLC, and Plaintiffs do not allege that RMLLC made the calls at issue. Rather, Plaintiffs allege that RMLLC is "aware of a trend" of realtors cold calling owners of properties who have had their MLS listing expire or be cancelled or withdrawn (even though cold-call telemarketing is not itself illegal), and assert that RMLLC ratifies those realtors' misconduct by endorsing

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

certain products and persons.   [Compl. at ¶¶ 6–9.]   But Plaintiffs fail to allege any connection between this alleged conduct on the part of RMLLC and the State of Arizona. RMLLC is a global franchisor, franchising real estate brokerages under the RE/MAX® brand in over 110 countries and territories.  [Smith Decl. at ¶7.]  If RE/MAX engaged in the conduct alleged, then that conduct was directed worldwide (including to all 50 states) from Colorado, and not specifically at Arizona.  Thus, if this case could be brought in Arizona, it can be brought in any state in the United States with no acknowledgement that a foreign corporation, such as RMLLC, cannot be haled into any court as if there is general jurisdiction over that company in all states.  Such a finding is not supported by either the Due Process Clause or the Supreme Court's holdings in *Walden* and *Bristol-Myers Squibb*.

Moreover, even if an agency test for specific jurisdiction did survive after *Daimler*, so as to allow adequate agency allegations to create specific jurisdiction if not contested by the defendant, here no agency between RMLLC, its franchisees, and those franchisees' independent contractor realtors exists for the complained-of calls to consumers who de-listed their houses and received calls from realtors.  As discussed in Part I.D. above, and in the concurrently filed Declaration of Serene Smith, RMLLC is not a real estate broker, and does not engage in real estate brokerage activity, or employ, direct, or control any of the over 60,000 agents in the United States affiliated with a franchisee's independent business. [*See* Smith Decl. at ¶12.]  RMLLC does not control or operate the independent businesses of its franchisees.  [*Id.* at ¶ 18.]  Moreover, each of the 3,790 independently owned and operated RE/MAX franchises throughout the United States retains their own employees, make their own choices on marketing (within brand guidelines), and are solely responsible for the day-to-day supervision and control of their businesses.  [*Id.* at ¶ 22.]  Furthermore, RMLLC has contractual requirements for franchisees operating in the United States to comply with all state and federal laws, which include the TCPA.  [*Id.* at ¶ 20.]

The telephone calls alleged to have been made to Plaintiffs regarding opportunities to act as their relators were not placed by or on behalf of RMLLC (a franchisor that does not call consumers for any reason regarding real estate sales), and RMLLC does not

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    authorize independent franchisees or those franchisee's employees or independent

2    contractors (real estate agents) to call on its behalf or hold themselves out as "RE/MAX" in

3    communications with the public.  [*See id.* at ¶¶ 23-24.]  Furthermore, there are no facts

4    alleged in the Complaint that would demonstrate that RMLLC itself did or said anything

5    sufficient to create a reasonable belief in Plaintiffs that realtors or franchisees had the

6    authority to act on behalf of RMLLC in making the calls at issue.

7            Instead, Plaintiffs allege that RMLLC ratifies realtor misconduct by endorsing

8    products from Landvoice and Ferry, which they claim promote cold-calling, and by

9    providing certain courses on RE/MAX University.  [Compl. at ¶ 9.]  But, importantly,

10   Plaintiffs do not assert facts sufficient to support a reasonable inference that the calls

11   received in Arizona (or Texas) were made by realtors who were using Landvoice and/or

12   implementing Ferry's techniques and training.  Further, Plaintiffs also do not allege that

13   Landvoice or Ferry's training would lead <u>only</u> to calls that violate the TCPA, as cold-calling

14   is not per se violative of the TCPA without more (i.e., a marketing call to someone on the

15   DNC list, or placed with certain technologies to cellular phones).

16           Thus, Plaintiffs fail to adequately allege a "relationship among [RMLLC], th[is]

17   forum, and th[is] litigation[,]"  *Walden,* 571 U.S. at 283–84, and they fail to establish how

18   RMLLC could possibly have had fair warning that the alleged conduct in this lawsuit, which

19   was directed (if at all) worldwide from Colorado, would subject it to the jurisdiction of

20   Arizona courts.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72 (1985).  "Due

21   process requires that a defendant be haled into court in a forum State based on his own

22   affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he

23   makes by interacting with other persons affiliated with the State."  *Walden,* 571 U.S. at 286

24   (quoting *Burger King*, 471 U.S. at 475); *id*. at 284–85 (the defendant's relationship with the

25   forum state "must arise out of contacts that the 'defendant himself' creates with the forum

26   State" and "not the defendant's contacts with persons who reside there.").  Accordingly,

27   RMLLC has no substantial contacts with Arizona related to this lawsuit which are sufficient

28   to justify the Court's exercise of specific jurisdiction over it.

III.   **CONCLUSION**

For these reasons, RMLLC respectfully requests that the Court dismiss the Complaint against it for lack of personal jurisdiction.

DATED this 20th day of December, 2019.

Respectfully submitted,

SNELL & WILMER L.L.P.

By: */s/ Gregory Marshall*

Gregory Marshall
Becca J. Wahlquist (*pro hac vice forthcoming*)
Rachael Peters Pugel
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

*Attorneys for RE/MAX, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of December, 2019, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing, and a copy to CM/ECF registrants.

*/s/Eileen Henry*